IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VERTEX PHARMACEUTICALS INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 22-966 (RGA) **CONSOLIDATED** |
| LUPIN LIMITED and LUPIN PHARMACEUTICALS, INC., | ) ) ) | |
| Defendants. | ) | |

**JOINT CLAIM CONSTRUCTION BRIEF WITH RESPECT TO THE '106 PATENT**

## TABLE OF CONTENTS

I.    INTRODUCTION ..............................................................................................................1

   A.    Plaintiff's Opening Introduction................................................................................1

   B.    Defendants' Answering Introduction...........................................................................2

   C.    Plaintiff's Reply Introduction ...................................................................................3

   D.    Defendants' Sur-Reply Introduction...........................................................................4

II.   BACKGROUND ...............................................................................................................5

   A.    Plaintiff's Background...............................................................................................5

      1.    Vertex's Breakthrough Kalydeco® Product.....................................................5

      2.    The Patents-in-Suit..........................................................................................5

         a.    The '481 and '916 Patents .......................................................................5

         b.    The '206, '046, '770, and '106 Patents......................................................6

      3.    Procedural History ...........................................................................................8

   B.    Defendants' Background ............................................................................................9

      1.    Litigation..........................................................................................................9

      2.    Patent Families.................................................................................................10

         a.    '481 and '916 patents..............................................................................10

         b.    '206, '046, '770, and '106 patents ..........................................................11

III.  REPRESENTATIVE CLAIM OF THE '106 PATENT...................................................12

IV.   AGREED-UPON CONSTRUCTIONS..............................................................................13

V.    DISPUTED CONSTRUCTIONS .....................................................................................13

   A.    Plaintiff's Opening Position......................................................................................14

      1.    No Construction Is Necessary Because the Meaning of the "About" Terms is Clear and Readily Understandable ...............................................................................14

      2.    To the Extent Construction Is Necessary, the Disputed Terms Should be Given Their Plain and Ordinary Meaning..............................................................................15

         a.    Vertex's Proposed Construction Is Consistent with Federal Circuit and District Court Precedent Regarding "About" Terms .............................................15

         b.    Vertex's Proposed Construction Is Supported by the Intrinsic Evidence..................16

         c.    The Specification Does Not Support A Numerical Construction for the "About" Terms .............................................................................................................17

      3.    The Disputed "About" Terms Are Not Indefinite..........................................19

      4.    Lupin's Request for Claim Construction Is Improper and Untimely .....................19

      5.    Conclusion .....................................................................................................21

B.     Defendants' Answering Position ...................................................................21

   1.     The specification and prosecution history support Lupin's proposed constructions. 21

     a.     Specification of the '106 Patent ..................................................................21

     b.     Prosecution History of Similar Patents ...................................................24

   2.     Plaintiff failed to follow the Amended Scheduling Order. .......................25

   3.     Plaintiff's arguments have no merit. ........................................................26

   4.     Alternatively, the proposed terms are indefinite. ....................................27

   5.     Conclusion ...............................................................................................29

C.     Plaintiff's Reply Position ..............................................................................29

   1.     Vertex's Proposed Construction Is Consistent with the Intrinsic Evidence ..............29

   2.     Lupin Seeks a Narrow Construction That Is Not Supported by the Intrinsic Evidence ...................................................................................................30

   3.     The Prosecution History Cited by Lupin Is Extrinsic Evidence Irrelevant to the Claim Construction of the Disputed "About" Terms...................................................32

     a.     There Is No Precedent for Applying the Doctrine of Prosecution Disclaimer to Unrelated Patents .........................................................................32

     b.     To the Extent the Court Considers this Extrinsic Evidence, Lupin Fails to Show Any Disclaimer That Would Limit the Claims to Their Rounding Ranges ...........................35

   4.     Lupin Has Failed to Show That the Disputed Terms Are Indefinite ........................36

   5.     Conclusion ...............................................................................................37

D.     Defendants' Sur-Reply Position ...................................................................37

   1.     The Intrinsic Evidence Supports Lupin's Proposed Constructions .........................37

   2.     The Prosecution History Of The '066 Application Is Relevant To The Proper Construction Of "About" In The '106 Patent .........................................................41

   3.     The Proposed Terms Are, Alternatively, Indefinite.................................................43

   4.     Conclusion ...............................................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*3Shape A/S v. Align Tech., Inc.*,
No. CV 18-886-LPS, 2020 WL 2188857 (D. Del. May 6, 2020)............................................42

*Abbott Lab'ys, Inc. v. Apotex Inc.*,
725 F. Supp. 2d 724, 727 (N.D. Ill. 2010) ...........................................................................27

*Abbott Lab'ys v. Dey, L.P.*,
287 F.3d 1097 (Fed. Cir. 2002)............................................................................33, 34, 43

*Actelion Pharms. LTD v. Mylan Pharms. Inc.*,
85 F.4th 1167 (Fed. Cir. 2023) ...........................................................................................42

*Amgen, Inc. v. Chugai Pharm. Co.*,
927 F.2d 1200 ....................................................................................................................44

*Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*,
No. 15-cv-915 (RGA), 2017 WL 1021844 (D. Del. Mar. 16, 2017)......................................14

*Arbutus Biopharma Corporation et al v. Moderna, Inc.*,
1-22-cv-00252, Memorandum Opinion (D. Del. April 3, 2024), ECF No. 266 ...............39, 40

*Astra Aktiebolag v. Kremers Urban Dev. Co.*,
No. 99 Civ. 8928 (BSJ), 2000 U.S. Dist. LEXIS 2511 (S.D.N.Y. Mar. 6, 2000) ..................27

*AstraZeneca AB v. Mylan Pharms. Inc.*,
19 F.4th 1325 (Fed. Cir. 2021) ...........................................................................................40

*Baxter Healthcare Corp. v. Nevakar Injectables, Inc.*,
No. CV 21-1184-CJB, 2023 WL 4175261 (D. Del. June 26, 2023)......................................37

*Ekchian v. Home Depot, Inc.*,
104 F.3d 1299 (Fed. Cir. 1997)................................................................................25, 36, 42

*ESCO Grp. LLC v. Deere & Co.*,
C.A. No. 20-1679-RGA-JLH, 2022 WL 1025967 (D. Del. Apr. 6, 2022) .............................34

*Ferring B.V. v. Watson Laby's*,
764 F.3d 1382 (Fed. Cir. 2014)......................................................................................15, 24

*Heron Therapeutics*,
No. 1-22-cv-00985, Memorandum Opinion and Order 12-14, ECF No. 150 .........................41

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001)........................................................................21

*IQASR LLC v. Wendt Corp.*,
    825 F. App'x 900 (Fed. Cir. 2020) ..............................................................28, 37

*Jeneric/Pentron, Inc. v. Dillon Co.*,
    205 F.3d 1377 (Fed. Cir. 2000).......................................................................38

*Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*,
    285 F.3d 1046 (Fed. Cir. 2002).......................................................................28

*Johnson Matthey Inc. v. Noven Pharms., Inc.*,
    No. 2:07-CV-260-CE, 2009 WL 2208214 (E.D. Tex. Jul. 21, 2009)....................................41

*Lipocine Inc. v. Clarus Therapeutics, Inc.*,
    C.A. No. 19-622-WCB (D. Del. Mar. 20, 2020), D.I. 119 .......................................18

*Music Choice v. Stingray Digit. Grp. Inc.*,
    No. 2:16-cv-00586, 2019 WL 8110069 (E.D. Tex. Nov. 19, 2019)................................21, 26

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)................................................................................19, 43

*Noven Pharms., Inc. v. Actavis Lab'ys UT, Inc.*,
    No. CV 15-249-LPS, 2016 WL 3625541 (D. Del. July 5, 2016) ....................................39, 40

*Pac. Coast Bldg. Prods., Inc. v. CertainTeed Gypsum, Inc.*,
    816 F. App'x 454 (Fed. Cir. 2020) ..............................................................28, 37

*Pacira Pharms., Inc. v. eVenus Pharms. Lab'ys, Inc.*,
    C.A. No. 22-718, 2023 WL 3841559 (D.N.J. June 6, 2023) ......................................... *passim*

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)....................................................................31, 35

*PPG Indus. v. Guardian Indus. Corp.*,
    156 F.3d 1351 (Fed. Cir. 1998)................................................................20, 26, 30

*RFID Tracker, Ltd. v. Wal-Mart Stores, Inc.*,
    342 F. App'x 628 (Fed. Cir. 2009) ...............................................................25, 36

*SpeedTrack, Inc. v. Amazon.com*,
    998 F.3d 1373 ......................................................................................25, 33

*Stingray Digital Group. Inc,* No. 2:16-00586, 2019 WL 8110069 (E.D. Tex. Nov. 19, 2019)
    ......................................................................................................26

*Sun Pharms. Indus. Ltd. v. Saptalis Pharms., LLC*,
   C.A. No. 18-648-WCB, 2019 WL 2549267 (D. Del. June 19, 2019) .........................15, 17, 29

*SZ DJI Tech. Co. v. Autel Robotics USA, LLC*,
   C.A. No. 16-706-LPS, 2019 WL 6840357 (D. Del. Dec. 16, 2019).......................................36

*Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*,
   743 F.3d 1359 (Fed. Cir. 2014)..............................................................................................38

*Thorner v. Sony Comput. Ent. Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012)..........................................................................................31, 35

*Transcend Med., Inc. v. Glaukos Corp.*,
   C.A. No. 13-830, 2015 WL 5546988 (D. Del. Sept. 18, 2015).........................................19, 36

*Trs. of Columbia Univ. v. Symantec Corp.*,
   811 F.3d 1359 (Fed. Cir. 2016)...................................................................................33, 40, 43

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997)..............................................................................................28

*UCB, Inc. v. KV Pharm. Co.*,
   C.A. No. 08-233-JJF, 2009 WL 2524519 (D. Del. Aug. 18, 2009).............................18, 31, 40

*Ultimate Combustion Co. v. Fuecotech, Inc.*,
   No. 12-60545-CV, 2013 WL 12091158 (S.D. Fla. Nov. 4, 2013). ............................21, 26, 27

*Verizon Servs. Corp. v. Vonage Holding Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007)..............................................................................................32

*Vifor Fresenius Med. Care Renal Pharma Ltd. v. Teva Pharms. USA, Inc.*,
   623 F. Supp. 3d 389 (D. Del. 2022), *appeal dismissed sub nom. Vifor Fresenius Med. Care
   Renal Pharma Ltd. v. Lupin Atlantis Holdings SA*, No. 2022-2253, 2023 WL 1794164 (Fed.
   Cir. Feb. 7, 2023) ...................................................................................................................41

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)................................................................................................33

*Vytacera Bio, LLC v. CytomX Therapeutics, Inc.*,
   No. CV 20-333-LPS-CJB, 2021 WL 4621866 (D. Del. Oct. 7, 2021) .....................................4

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
   842 F.2d 1275 (Fed. Cir.1988)..................................................................................................4

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997)..................................................................................................................27

*Whirlpool Corp. v. Ozcan*,
C.A. No. 2:15-cv-2103-JRG, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) .........................36

## STATUTES AND RULES

35 U.S.C. § 282.................................................................................................................................19

## I.    INTRODUCTION

### A.    Plaintiff's Opening Introduction

This is a consolidated action for patent infringement under the Hatch-Waxman Act brought against Defendants Lupin Limited and Lupin Pharmaceuticals, Inc. (collectively, "Lupin") arising from Lupin's submission of an ANDA seeking approval to commercially market a generic version of Vertex Pharmaceuticals Incorporated's ("Vertex") Kalydeco® (ivacaftor) oral granules, approved for the treatment of cystic fibrosis in certain patients.  Vertex has asserted six patents directed to pharmaceutical compositions containing ivacaftor.  Lupin asks the Court to construe three claim terms from the last asserted patent, U.S. Patent No. 11,752,106 (the "'106 patent"), directed to certain components of the claimed pharmaceutical compositions.  The parties previously agreed that no claim construction was required for the five earlier-asserted patents, including three patents related to the '106 patent that contain substantively identical claim terms for the same components of the claimed pharmaceutical compositions as the disputed terms.

The disputed terms each contain the word "about," which Lupin proposes to restrict to specific numerical ranges.  No construction is necessary here.  Lupin does not seek construction of all instances of "about" in the '106 patent claims.  Nor did Lupin seek construction of any instance of "about" in the claims of the other asserted patents, including claim terms that are substantively identical to the disputed terms.  To the extent that the Court construes the disputed terms, there is no basis here to deviate from their plain and ordinary meaning as a term of approximation.  There is no express or implied definition of "about" in the '106 patent specification that supports Lupin's proposed constructions.  The strict numerical constructions proposed by Lupin for only certain uses of "about" in the asserted claims of only one asserted patent are arbitrary and should be rejected.

1

Lupin's motivation for seeking claim construction now—despite having had an earlier opportunity to seek construction of terms in related patents in this action—arises from a belated attempt to create noninfringement arguments. The Court does not need to address Lupin's request here because, as the Federal Circuit has made clear, it is improper to consider infringement issues under the guise of claim construction. Should the Court construe the terms, it should adopt Vertex's construction and accord the "about" terms their plain and ordinary meaning without strict numeric limits.

## B.    Defendants' Answering Introduction

The claims of the '106 patent are directed to pharmaceutical formulations that contain specific amounts of certain excipients and active pharmaceutical ingredient ("API"). The proposed product described in Lupin's ANDA No. 217431 ("Lupin's ANDA product") does not contain the specific claimed amounts (or even close to those amounts) of excipients and API. Plaintiff nevertheless relies on the word "about" in the claims to assert that Lupin's ANDA product infringes the '106 patent, without any detail in its infringement contentions to provide the required notice to Lupin as to *how* its product actually infringes these limitations either literally or under the doctrine of equivalents.

The '106 patent specification makes it clear that the recited quantities are specific, even when used with the word "about," and demonstrates the patentee's intent that these quantities be exact in nature and only allow for basic rounding principles. During prosecution of a similar patent family, Plaintiff represented to the PTO that the specific amounts of ingredients claimed in the formulation were required for the formulation to work in the proper manner. Plaintiff relied on the claimed ingredients and amounts to distinguish its alleged invention over the prior art because the prior art did not disclose the "specific" ingredients and their "specific" amounts.

2

The Amended Scheduling Order provides a timeline for the parties to propose claim constructions for the terms of the '106 patent. Lupin provided its disputed terms and proposed constructions according to that timeline. (*See* Amended Scheduling Order (D.I. 65) at 4-6.) As this litigation has progressed, it has become apparent that the parties believe the word "about" means different things, and there is nothing that precludes Lupin from pursuing construction of this term that is central to the infringement analysis in this case.

Plaintiff's proposed constructions fail to meet this Court's requirements outlined in the Amended Scheduling Order because they fail to adequately explain what is meant by "plain and ordinary" meaning. (*See* Amended Scheduling Order (D.I. 64) at FN 1 "[i]f a party proposes a construction of a term to be its 'plain and ordinary' meaning, the party must explain what that meaning is.")

If the Court decides not to establish metes and bounds for the word "about" in connection with the specific claimed amounts, then the terms are necessarily indefinite as they fail to provide notice of the scope of the invention with reasonable certainty.

### C.    Plaintiff's Reply Introduction

Despite having litigated patents with substantively identical terms for two years, Lupin now belatedly seeks construction and argues that, absent a strict numerical definition of "about," the disputed terms are indefinite. As evidenced by Lupin's own conduct in this case, the meaning of the word "about" is sufficiently clear in the context of the technology at issue and no construction is necessary.

Even if the court decides to construe the word "about," Lupin's proposed construction is without support in the intrinsic record or extrinsic evidence that it cites. There is no express or implied definition of "about" in the '106 patent specification that supports Lupin's proposed construction. Lupin attempts to bolster its case by pointing to a single statement made during the

prosecution of an unrelated patent application assigned to Vertex as an alleged "disclaimer." The prosecution history of an unrelated application cannot be considered in interpreting the meaning of the '106 patent claims. But even if it could, there is no clear and unmistakable disclaimer of claim scope here. Accordingly, there is no basis to deviate from the plain and ordinary meaning of "about" and the Court should adopt Vertex's proposed construction.

Lupin's indefiniteness theory also fails. Lupin provides no extrinsic support for its theory. Lupin also cites no legal authority holding pharmaceutical composition claims such as those at issue here indefinite.

### D.    Defendants' Sur-Reply Introduction

The proper construction of terms containing "about" "is dependent on the factual situation presented" and "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1280 (Fed. Cir.1988); *Vytacera Bio, LLC v. CytomX Therapeutics, Inc.*, No. CV 20-333-LPS-CJB, 2021 WL 4621866, at *3 (D. Del. Oct. 7, 2021), *report and recommendation adopted*, No. CV 20-333-LPS-CJB, 2022 WL 1448694 (D. Del. May 9, 2022) (internal cite omitted).

Lupin's proposed constructions for the terms containing "about" in the '106 patent are supported by both the intrinsic and extrinsic evidence. Differences in the context of "about" in the claim language itself as well as the use of varying significant figures after the decimal point and trailing zeros in the intrinsic evidence support Lupin's proposed constructions. Courts have applied claim constructions consistent with Lupin's proposals in these circumstances. Further, the prosecution history of the '066 application is at least extrinsic evidence that informs the interpretation of the proposed terms and further supports a construction in line with rounding principles.

4

Should the court decide not to apply Lupin's proposed constructions, case law supports a determination that these terms are indefinite.

## II.     BACKGROUND

### A.     Plaintiff's Background

#### 1.     Vertex's Breakthrough Kalydeco® Product

Kalydeco® is the first drug approved to treat cystic fibrosis which is caused by mutations in the cystic fibrosis transmembrane conductance regulator ("CFTR") gene and one of two therapies first granted Breakthrough Therapy designation by the FDA in late 2012. *See* Exhibit A, '106 patent at 4:10-17. Kalydeco® is currently approved by the FDA for the treatment of cystic fibrosis in patients aged 1 month and older who have at least one mutation in the CFTR gene that is responsive to ivacaftor based on clinical and/or *in vitro* assay data. Exhibit B, Kalydeco® Package Insert (revised Aug. 3, 2023) at 1. Kalydeco® is available as tablets, which are administered to patients aged 6 years and older, and as oral granules, which are administered to patients aged 1 month to 5 years old. *Id.* Ivacaftor is the active ingredient in Kalydeco® and is also a component of Vertex's other FDA-approved cystic fibrosis drugs Orkambi®, Symdeko®, and Trikafta®.

#### 2.     The Patents-in-Suit

##### a.     The '481 and '916 Patents

U.S. Patent No. 10,646,481 (the "'481 patent"), titled "Pharmaceutical Composition and Administrations Thereof," issued on May 12, 2020, from U.S. Application No. 15/253,636, filed August 31, 2016. The '481 patent claims priority to six Provisional Applications (Nos. 61/088,704, 61/088,801, 61/090,096, 61/146,163, 61/181,527, 61/183,345), the earliest of which was filed on August 13, 2008. The '481 patent is directed to pharmaceutical compositions, including tablets, comprising a solid dispersion containing three ingredients: ivacaftor, the

polymer hydroxypropylmethylcellulose acetate succinate ("HPMCAS"), and the surfactant sodium lauryl sulfate ("SLS"), along with other possible excipients or inactive ingredients. Solid dispersions are mixtures of one or more drugs dispersed in an appropriate carrier medium, such as a polymer, that improves the physical stability, dissolution, and/or solubility of the drug, including of amorphous drugs such as ivacaftor in the claimed compositions. Exhibit C, '481 patent at 8:45-9:13. Solid dispersions may also comprise other excipients, such as surfactants. *Id.*

U.S. Patent No. 11,564,916 (the "'916 patent") is a divisional of the '481 patent and issued on January 31, 2023. The '916 patent is directed to methods of treating or lessening the severity of cystic fibrosis in patients through the administration of a pharmaceutical composition comprising a solid dispersion comprising ivacaftor, HPMCAS and SLS, with other possible excipients.

### b.    The '206, '046, '770, and '106 Patents

The '106 patent, titled "Pharmaceutical Composition and Administrations Thereof," issued on September 12, 2023, from U.S. Application No. 17/475,622, filed September 15, 2021. U.S. Patent Nos. 8,883,206 (the "'206 patent"), 10,272,046 (the "'046 patent"), 11,147,770 (the "'770 patent") belong to the same patent family as the '106 patent and claim priority to Provisional Application No. 61/710,352, filed on October 5, 2012, and Provisional Application No. 61/603,882 filed on February 27, 2012. The '106 patent family is generally directed to, *inter alia*, pharmaceutical compositions containing a solid dispersion of ivacaftor including formulations of the same into granules, pellets, particles, and mini-tablets.

The '106 patent family addressed "the need for stable bioavailable pharmaceutical compositions of [ivacaftor] useful for treating patients, for example, CF patients having problems in swallowing adult tablets, including but not limited to pediatric patients." Exhibit A, '106 patent at 3:53-65. For example, pediatric patients may require dosage forms "that facilitate[] swallowing

6

or that may be easily mixed with easily digested foods" but solutions such as the use of crushed tablets "can lead to absorption problems, fragments that are either too difficult to swallow or fail to solubilize and remain undigested resulting in therapeutic failure, or dosage inaccuracies." *Id.* at 3:26-52. The claimed pharmaceutical compositions can be formulated into dosage forms suitable for administration to pediatric patients and incorporate the high drug load solid dispersions of ivacaftor described and claimed in the '481 and '916 patents.

Claim 1 of the '106 patent is directed to pharmaceutical compositions comprising a solid dispersion comprising ivacaftor, HPMCAS and SLS. The claimed pharmaceutical compositions also include a binary filler, a sweetener, a disintegrant, a glidant, and a lubricant. The disputed claim terms appear in the solid dispersion limitation in asserted independent claim 1 and, through dependency, asserted claims 2-10 and 15-20 of the '106 patent. Claim 1 is representative, with the three disputed terms italicized:

> 1. A pharmaceutical composition in a unit dose form comprising one or a plurality of granules, pellets, particles or mini-tablets, wherein the composition comprises:
>    (a) a solid dispersion in an amount from 30 to 40 percent by weight of the composition, wherein the solid dispersion comprises:
>       (i) *about 80 wt % of substantially amorphous or amorphous N-[2,4-bis(1,1-dimethylethyl)-5-hydroxypheny1]-1,4-dihydro-4-oxoquinoline-3-carboxamide*[1] *(Compound 1) by weight of the dispersion,*
>       (ii) *about 19.5 wt % of hydroxypropylmethylcellulose acetate succinate (HPMCAS) by weight of the dispersion,* and
>       (iii) *about 0.5 wt % sodium lauryl sulfate (SLS) by weight of the dispersion*;
>    (b) a binary filler, wherein the binary filler comprises mannitol and lactose in a ratio of about 1:3 mannitol to lactose;
>    (c) a sweetener, wherein the sweetener is sucralose;
>    (d) a disintegrant;
>    (e) a glidant; and
>    (f) a lubricant;
>    wherein the unit dose form comprises at least about 5 mg of substantially amorphous or amorphous Compound 1, and

---

[1] The chemical name for ivacaftor is N-[2,4-bis(1,1-dimethylethyl)-5-hydroxypheny1]-1,4-dihydro-4-oxoquinoline-3-carboxamide.

wherein substantially amorphous Compound 1 has less than 15% crystallinity.

The '206, '046, and '770 patents recite substantively identical terms as the three disputed "about" terms of the '106 patent. As explained below, Lupin admitted that these substantively identical "about" terms, which appear in patents with specifications identical to the '106 patent, did not require construction during the earlier claim construction phases in this action.

| '206 patent, claim 1 | '046 patent, claim 1 | '770 patent, claim 1 |
|---|---|---|
| about 35 wt % of a solid dispersion by weight of the composition, wherein the dispersion comprises *about 80 wt % of substantially amorphous or amorphous N-[2,4-Bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide by weight of the dispersion, about 19.5 wt % of HPMCAS by weight of the dispersion*, and *about 0.5 wt % SLS by weight of the dispersion* | a solid dispersion in an amount from about 30 to about 50 percent by weight of the composition, wherein the dispersion comprises *about 80 wt % of substantially amorphous or amorphous N-[2,4-bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide (Compound 1) by weight of the dispersion, about 19.5 wt % of HPMCAS by weight of the dispersion*, and *about 0.5 wt % SLS by weight of the dispersion* | wherein the solid dispersion comprises *about 80 wt % of substantially amorphous or amorphous N-[2,4-bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide (Compound 1) by weight of the dispersion, about 19.5 wt % of hydroxypropylmethylcellulose acetate succinate (HPMCAS) by weight of the dispersion*, and *about 0.5 wt % sodium lauryl sulfate (SLS) by weight of the dispersion* |

### 3.    Procedural History

This action commenced on July 22, 2022 when Vertex filed suit against Lupin for infringement of the '206, '046, '481, and '770 patents in connection with Lupin's submission of ANDA No. 217431 seeking approval to commercially market a generic version of Vertex's Kalydeco® oral granules prior to the expiration of said patents. Pursuant to the original scheduling order, the parties were scheduled to exchange disclosures of proposed claim terms and preliminary constructions for the '206, '046, '481, '770 patents on March 16, 2023. *See* D.I. 20. At that time, Lupin stated that it "does not believe any terms for the asserted claims . . . require construction."

Exhibit D, *see also* D.I. 33. As Vertex also did not propose any terms for construction, the parties subsequently requested the Court remove the remaining claim construction deadlines relating to the '206, '046, '481, and '770 patents. The Court granted the parties' request on March 31, 2023. D.I. 39.

On May 26, 2023, Vertex brought a second patent infringement suit against Lupin arising from Lupin's amendment of its ANDA to include a Paragraph IV certification for the '916 patent. *See* D.I. 43. This second action was subsequently consolidated with this action. Lupin again did not propose any terms for construction when the parties were scheduled to exchange claim construction disclosures for the '916 patent. Shortly thereafter, the remaining claim construction deadlines relating to the '916 patent were cancelled at the parties' request. D.I. 56.

On April 11, 2024, Vertex brought a third patent infringement suit against Lupin arising from Lupin's amendment of its ANDA to include a Paragraph IV certification for the '106 patent, which is the latest issued patent in the same family as the '206, '046, and '770 patents. This third action was subsequently consolidated with the earlier filed actions.

### B.   Defendants' Background

#### 1.   Litigation

This consolidated action is a patent infringement suit under the Hatch-Waxman Act. Vertex asserted patent infringement under the Hatch-Waxman Act in response to Lupin's filing of Abbreviated New Drug Application ("ANDA") No. 217431 seeking approval to market a generic version of Vertex's KALYDECO® ivacaftor oral granules 25 mg, 50 mg, and 75 mg, approved by the U.S. Food and Drug Administration ("FDA") for the treatment of cystic fibrosis.

Plaintiff initially filed a complaint on July 22, 2022, alleging that Lupin's submission of ANDA No. 217431 infringed the '206 patent, the '046 patent, the '481 patent, and the '770 patent,

9

which claim pharmaceutical compositions containing ivacaftor and certain excipients in specific amounts.

On May 26, 2023, Plaintiff filed a second complaint alleging that Lupin's submission of ANDA No. 217431 infringed the '916 patent, which claims a method of treating cystic fibrosis by administering a pharmaceutical composition containing ivacaftor and certain excipients in specific amounts.

On April 11, 2024, Plaintiff filed a third complaint alleging that Lupin infringed the '106 patent, which (similar to other asserted patents) claims pharmaceutical compositions containing ivacaftor and certain excipients in specific amounts.

### 2. Patent Families

#### a. '481 and '916 patents

The '481 patent (Exhibit C) and '916 patent (Exhibit J) are titled "Pharmaceutical Composition and Administrations Thereof" and are assigned to Vertex. The '481 and '916 patents belong to the same patent family and claim priority to the same provisional patent applications (Provisional Application Nos. 61/088,704, 61/088,801, 61/090,096, 61/146,163, 61/181,527, 61/183,345), the earliest of which was filed on August 13, 2008.

The '481 patent and '916 patent issued on May 12, 2020 and January 31, 2023, respectively, and both claim a pharmaceutical composition comprising a solid dispersion comprising:

(a) 80% of amorphous or substantially amorphous N-[2,4-Bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide (Compound 1) by weight of the dispersion,

(b) 19.5% of hydroxypropylmethylcellulose acetate succinate (HPMCAS) by weight of the dispersion, and

(c)  0.5% of sodium lauryl sulfate (SLS) by weight of the dispersion.

(*See* '481 patent (Exhibit C) at 63:1-10, 48-58, 64:11-16, 51-56;  '916 patent (Exhibit J) at 63:60-64:2, 65:7-17, 66:15-20).

Both the '481 and '916 patents are continuations of  U.S. Patent Application No. 12/583,066 ("the '066 application"), filed on August 13, 2009, that claimed a pharmaceutical composition comprising a solid dispersion comprising identical amounts (including "about") of ivacaftor, HPMCAS, and SLS as the terms of the '106 patent currently in dispute.  '066 application prosecution history, September 7, 2012 Amendment at 2, 3, and 4 (Exhibit E). During the prosecution of the '066 application, Vertex argued in response to an obviousness rejection that the claimed invention was not obvious over the prior art because the prior art did not disclose the specific excipients (including HPMCAS and SLS) or the specific amounts of those excipients and API.  Specifically, Vertex stated that the prior art did not "provide[] motivation for the selection of a specific API and at least **eight specific excipients** or the **specific amounts** of that API and those excipients as required by the claims." ('066 application prosecution history, September 7, 2012, Amendment at 7-8 (emphasis in original)(Exhibit E).)

After Vertex made these representations to the PTO, it abandoned the '066 application and filed the continuation applications that ultimately issued as the '481 and '916 patents, which claim pharmaceutical compositions comprising a solid dispersion comprising 80 wt % ivacaftor, 19.5 wt % HPMCAS, and 0.5 wt % SLS.  (*See* '481 patent (Exhibit C) at 63:1-10, 48-58, 64:11-16, 51-56;  '916 patent (Exhibit J) at 63:60-64:2, 65:7-17, 66:15-20).

### b.    '206, '046, '770, and '106 patents

Also, after the above representation to the PTO, Vertex filed additional patent applications in a second patent family, including the applications that issued as the '206, '046, '770, and '106 patents (filed on May 23, 2014, June 13, 2016, March 12, 2019, and September 15, 2021,

11

respectively).  The '206, '046, '770, and '106 patents are titled "Pharmaceutical Composition and Administrations Thereof" and are assigned to Vertex.  The '206, '046, '770, and '106 patents belong to the same patent family and claim priority to the same provisional patent applications (Provisional Application No. 61/710,352, filed on October 5, 2012, and Provisional Application No. 61/603,882 filed on February 27, 2012).  The '206, '046, '770, and '106 patents issued on November 11, 2014, April 30, 2019, October 19, 2021, and September 12, 2023, respectively.

The '206, '046, '770, and '106 patents each claim a pharmaceutical composition comprising a solid dispersion comprising:

> (i) about 80 wt % of substantially amorphous or amorphous N-[2,4-bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide (Compound 1) by weight of the dispersion,

> (ii) about 19.5 wt % of hydroxypropylmethylcellulose acetate succinate (HPMCAS) by weight of the dispersion, and

> (iii) about 0.5 wt % sodium lauryl sulfate (SLS) by weight of the dispersion.

*See*, *e.g.*, '106 patent (Exhibit A) at 190:39-47.  These claimed quantities of ivacaftor, HPMCAS, and SLS are the same quantities that were recited in the then-pending claims of the '066 application at the time of the patentee's September 7, 2012 amendment.  *See* '066 application prosecution history, September 7, 2012 Claim Amendments at 2, 3, and 4 (Exhibit E).

## III.    REPRESENTATIVE CLAIM OF THE '106 PATENT[2]

1.    A pharmaceutical composition in a unit dose form comprising one or a plurality of granules, pellets, particles or mini-tablets, wherein the composition comprises:

> (a) a solid dispersion in an amount from 30 to 40 percent by weight of the composition, wherein the solid dispersion comprises:

> > (i) *about 80 wt % of substantially amorphous or amorphous N-[2,4-bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide (Compound 1) by weight of the dispersion*,

---

[2] Pursuant to the Scheduling Order, the disputed claim terms are italicized.  D.I. 65, n.3.

(ii) *about 19.5 wt % of hydroxypropylmethylcellulose acetate succinate (HPMCAS) by weight of the dispersion*, and

(iii) *about 0.5 wt % sodium lauryl sulfate (SLS) by weight of the dispersion*;

(b) a binary filler, wherein the binary filler comprises mannitol and lactose in a ratio of about 1:3 mannitol to lactose;

(c) a sweetener, wherein the sweetener is sucralose;

(d) a disintegrant;

(e) a glidant; and

(f) a lubricant;

wherein the unit dose form comprises at least about 5 mg of substantially amorphous or amorphous Compound 1, and

wherein substantially amorphous Compound 1 has less than 15% crystallinity.

## IV.    AGREED-UPON CONSTRUCTIONS

The parties have not reached agreement regarding the construction for any terms of the '106 patent in dispute.

## V.    DISPUTED CONSTRUCTIONS

The parties dispute the construction of the following "about" terms of the '106 patent.

| Claim | Term | Vertex's Construction | Lupin's Construction |
|---|---|---|---|
| 1(a)(i) | "about 80 wt % of substantially amorphous or amorphous N-[2,4-bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide (Compound 1) by weight of the dispersion" | No construction necessary.<br><br>The plain and ordinary meaning of this term is the exact claim language, *i.e.*, "about 80 wt % of substantially amorphous or amorphous N-[2,4-bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide (Compound 1) by weight of the dispersion." | "79.5 wt % to 80.4 wt % of substantially amorphous or amorphous N-[2,4-bis(1,1-dimethylethyl)-5-hydroxyphenyl]-1,4-dihydro-4-oxoquinoline-3-carboxamide (Compound 1) by weight of the dispersion"<br><br>Alternatively, indefinite. |

| Claim | Term | Vertex's Construction | Lupin's Construction |
|---|---|---|---|
| 1(a)(ii) | "about 19.5 wt % of hydroxypropyl-methylcellulose acetate succinate (HPMCAS) by weight of the dispersion" | No construction necessary.<br><br>The plain and ordinary meaning of this term is the exact claim language, *i.e.*, "about 19.5 wt % of hydroxypropyl-methylcellulose acetate succinate (HPMCAS) by weight of the dispersion." | "19.45 wt % to 19.54 wt % of hydroxypropyl-methylcellulose acetate succinate (HPMCAS) by weight of the dispersion"<br><br>Alternatively, indefinite. |
| 1(a)(iii) | "about 0.5 wt % sodium lauryl sulfate (SLS) by weight of the dispersion" | No construction necessary.<br><br>The plain and ordinary meaning of this term is the exact claim language, *i.e.*, "about 0.5 wt % sodium lauryl sulfate (SLS) by weight of the dispersion." | "0.45 wt % to 0.54 wt % sodium lauryl sulfate (SLS) by weight of the dispersion"<br><br>Alternatively, indefinite. |

The parties provide their positions for the three disputed terms together herein.

### A.    Plaintiff's Opening Position

#### 1.    No Construction Is Necessary Because the Meaning of the "About" Terms is Clear and Readily Understandable

Lupin seeks construction of the word "about" in the three ivacaftor solid dispersion component terms of the '106 patent. Where the meaning of a claim term is clear and readily understandable to the factfinder like here, no further construction is necessary. *See Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-cv-915 (RGA), 2017 WL 1021844, at *4-5 (D. Del. Mar. 16, 2017) (declining to construe "about" as used in "wherein the intra-polyisoprene particle crosslinks and the inter-polyisoprene particle crosslinks are such that the molecular weight is less than about [x] g/mol between the crosslinks" where construction would not aid the factfinder's understanding). That Lupin does not seek construction of other instances of "about" in the '106 patent claims or any instance of "about" in the other asserted patent claims

further supports that the meaning of the word is sufficiently clear in the context of the technology at issue here and does not require further elaboration through claim construction. Accordingly, the Court does not need to construe the three "about" terms here.

### 2. To the Extent Construction Is Necessary, the Disputed Terms Should be Given Their Plain and Ordinary Meaning

#### a. Vertex's Proposed Construction Is Consistent with Federal Circuit and District Court Precedent Regarding "About" Terms

To the extent the Court construes these terms, the Court should adopt their plain and ordinary meaning, *i.e.*, the exact claim language. Courts have on occasion adopted "approximately" as the plain and ordinary meaning, but this is simply a synonym for "about." Vertex proposes the exact claim language as the plain and ordinary meaning because the word "about" is sufficiently clear.

Courts, including those in this District, have routinely accorded "about" terms in pharmaceutical patents their plain and ordinary meaning absent express definition in the specification or other indication from the intrinsic or extrinsic evidence. For example, in *Ferring*, the Federal Circuit affirmed the district court's plain and ordinary meaning construction of "about" in claim terms describing the amount of active pharmaceutical ingredient released (*i.e.*, "less than about 70% by weight . . . at about 45 minutes") over Ferring's proposed numerical construction of "± 10 percent." *Ferring*, 764 F.3d at 1389; *Sun Pharms. Indus. Ltd. v. Saptalis Pharms., LLC*, C.A. No. 18-648-WCB, 2019 WL 2549267, at *4-5 (D. Del. June 19, 2019). In doing so, the Federal Circuit specifically held that the district court did not err in "refusing to give ['about'] a more specific construction," noting how the term was "not defined either explicitly or by implication by the specification." *Ferring*, 764 F.3d at 1389.

15

Similarly, in *Pacira*, a District of New Jersey court adopted a plain and ordinary construction of "approximately" for disputed "about" pH terms over the defendant's numerical construction. *Pacira Pharms., Inc. v. eVenus Pharms. Lab'ys, Inc.*, C.A. No. 22-718, 2023 WL 3841559, at *14 (D.N.J. June 6, 2023). Although there was no express definition of "about" in the specification, the defendant argued that the patentee had disclaimed a pH of 5.34 and pH of 5.7 based on data presented in the specification and statements made during the prosecution of related patents. *Id.* at *14-15. The court did not find the defendant's argument persuasive, stating that "the Court 'declines to arbitrarily construe "about" through use of rounding principles'" where "there is no intrinsic evidence to support" such a construction. *Id.* at *14.

**b.    Vertex's Proposed Construction Is Supported by the Intrinsic Evidence**

There is no definition, express or otherwise, of the word "about" in the specification of the '106 patent to support departing from the plain and ordinary meaning of the disputed terms. Rather, the specification repeatedly recites ***over 50*** exemplary embodiments of pharmaceutical compositions comprising the claimed solid dispersion using the same language as set forth in the claims. For example, the specification states:

> In one embodiment, the solid dispersion comprises ***about 80 percent of amorphous Compound 1 by weight of the solid dispersion, and about 19.5 percent of HPMCAS by weight of the solid dispersion, and about 0.5 percent SLS by weight of the dispersion***.

Exhibit A, '106 patent at 17:57-61 (emphasis added).

> Another exemplary solid dispersion contains ***about 80 wt % of substantially amorphous or amorphous Compound 1, about 19.5 wt % of HPMCAS, and about 0.5 wt % of SLS***.

Exhibit A, '106 patent at 51:48-50 (emphasis added).

> One powder pharmaceutical composition of the present invention comprises about 46.9% of a solid dispersion by weight of the composition, wherein the dispersion comprises ***about 80 wt % of***

16

> *substantially amorphous or amorphous Compound 1 by weight of*
> *the dispersion, about 19.5 wt % of HPMCAS by weight of the*
> *dispersion, and about 0.5 wt % SLS by weight of the dispersion*[.]

Exhibit A, '106 patent at 59:27-33 (emphasis added).

The specification further recites around 30 exemplary embodiments of methods of treatment using said pharmaceutical compositions, which again, uses the same language set forth in the claims. *See, e.g.*, Exhibit A, '106 patent at 103:53-67.

The '106 patent also repeatedly and consistently uses the word "about" without reference to a specific parameter or particular range of values. As the specification does not use the word "about" to consistently draw a specific numerical distinction, there is no basis for departing from the plain and ordinary meaning of "about" here. *Sun Pharms*., 2019 WL 2549267, at *4-5 ("Construing 'about' to mean 'approximately' also aligns with the Federal Circuit's instructions that '[g]enerally claim terms should be construed consistently with their ordinary and customary meanings.'").

### c. The Specification Does Not Support A Numerical Construction for the "About" Terms

Lupin seeks specific numerical constructions of each of the disputed terms which are contrary to established principles of claim construction. Specifically, Vertex understands that Lupin asserts that the disputed terms should be limited to the proposed ranges based on rounding principles. Courts have declined to import such numerical limitations, including rounding ranges, into "about" terms absent specific support in the intrinsic evidence to depart from their plain and ordinary meaning.

For example, in *Lipocine*, the court emphasized that it would be "counterintuitive" to adopt a rounding range construction for the "about" dosage terms in dispute because "in the absence of the word 'about,' a stated value . . . would be understood to encompass the rounding range for that

17

value." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, C.A. No. 19-622-WCB (D. Del. Mar. 20, 2020), D.I. 119 at 44-45, 45 n.7. Ultimately, the court construed "about" to mean "approximately" over defendant's assertion that "the dose amounts set forth in several of the specification examples are given with specificity, to the milligram, and that the dose amounts set forth in the claims should therefore be interpreted to depart from the recited values by no more than one-half milligram." *Id.* at 44, 49. In addition to finding the values set forth in the specification exemplary, the court contrasted the situation with one where the claimed invention is described with a degree of precision to support a strict numerical limit. *Id.* at 44-46.

Other courts have similarly addressed the issues that Lupin attempts to insert here. For example, in *UCB, Inc.*, the court construed several "about" terms to mean "approximately" over the defendant's attempt to construe the term "more stringently as requiring precision within 'rounding' or 'measurement error.'" *UCB, Inc. v. KV Pharm. Co.*, C.A. No. 08-233-JJF, 2009 WL 2524519, at *2-3 (D. Del. Aug. 18, 2009). In particular, the defendant argued that every description in the specification of the dosage strengths were "from 10 mg to 40 mg and stated in 5 mg or 10 mg increments," which supported that the variance permitted by "about" must be less than the 5 mg increments in the specification. *Id.* at *3-4. The court rejected the argument because there was "nothing about the[] particular examples suggesting that the endpoints of the 10 to 40 mg dosage range should be limited in terms of 'measurement error' or 'rounding error,' as Defendant requests." *Id.* at *5; *see also Pacira*, at *14-15.

Here, it is likewise contrary to the plain language of the claims to limit the solid dispersion terms to a rounding range. The '106 patent repeatedly uses the word "about" without reference to a specific parameter or particular range of values. There is no limiting or definitional language for "about" suggesting that the patentee intended to equate "about" to a rounding range or to depart

18

from the plain and ordinary meaning of the word. The specific ranges proposed by Lupin for the three solid dispersion components do not appear anywhere in the specification. Accordingly, Lupin's proposed constructions should be rejected.

### 3. The Disputed "About" Terms Are Not Indefinite

As an alternative to its erroneous numerical constructions, Lupin asks the Court to find the disputed claims indefinite. Lupin has provided no explanation for its indefiniteness challenge despite having the burden of proving indefiniteness by clear and convincing evidence. 35 U.S.C. § 282(a); *see also Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 912 n.10 (2014). Lupin did not assert that the disputed terms were indefinite either in its Paragraph IV Notice Letter or its invalidity contentions for the '106 patent, nor has Lupin asserted any indefiniteness theory for any of the other asserted patents that employ the term "about" in the claims.

Terms of approximation like "about" are not rendered indefinite merely by the fact that there is no strict numerical limitation. *See, e.g.*, *Transcend Med., Inc. v. Glaukos Corp.*, C.A. No. 13-830, 2015 WL 5546988, at *8 (D. Del. Sept. 18, 2015) ("[A] strict exact limitation on the size of incision would be inappropriate and the phraseology of the contested term accounts for this. As such, the term 'less than about 1 mm' informs a skilled artisan as to the scope of the invention with reasonable certainty and, thus, is not indefinite.").

### 4. Lupin's Request for Claim Construction Is Improper and Untimely

Moreover, the Court does not need to address Lupin's request for claim construction here because Lupin (1) has not raised a claim construction issue but rather an infringement issue more appropriately addressed with the benefit of fact and expert discovery, and (2) has waived its argument by failing to raise it earlier in this action.

19

### a. Lupin's Request Is An Attempt to Create a Noninfringement Argument Under the Guise of Claim Construction

The claim construction dispute raised by Lupin here does not seek to clarify the meaning of any of the words of the disputed terms but rather seeks to manufacture a noninfringement argument by placing specific numerical ranges on the amounts of ivacaftor and excipients in the claimed solid dispersion. Lupin has asserted that resolution of this claim construction dispute impacts infringement. D.I. 78 ("It is Defendants' position that a resolution of this dispute is important to properly evaluate Vertex's assertion that Lupin's ANDA product infringes claims 1-10 and 15-20 of the '106 patent.").

However, as the Federal Circuit has made clear, courts may not, under the rubric of claim construction, "give a claim whatever additional precision or specificity is necessary to facilitate a comparison between the claim and the accused product." *PPG*, 156 F.3d at 1355. Instead, "the task of determining whether the construed claim reads on the accused product is for the finder of fact." *Id.*; *see also Lipocine*, C.A. No. 19-622-WCB, D.I. 119 at 48-49; *Pacira*, 2023 WL 3841559, at *15. Because the core of this claim construction dispute goes to the ultimate issue of infringement that requires further fact and expert discovery, the Court does not need to address Lupin's request for claim construction.

### b. Lupin Has Waived Its Claim Construction Argument

As explained above, Lupin did not seek construction of any terms in the other five asserted patents. Notably, three of these patents recite substantively identical "about" terms of "about 80 wt % of substantially amorphous or amorphous [ivacaftor] by weight of the dispersion," "about 19.5 wt % of HPMCAS by weight of the dispersion," and "about 0.5 wt % SLS by weight of the dispersion." *See* Section II.A.2.b. Now 16 months after the claim construction deadline under the original scheduling order for similar terms, Lupin seeks to construe these "about" terms for the

20

first time.  Courts have denied untimely requests for claim construction in similar circumstances where the petitioning party was aware of the information relied upon during the claim construction stage of the case but failed to raise the argument.  *Cf.*, *Music Choice v. Stingray Digit. Grp. Inc.*, No. 2:16-cv-00586, 2019 WL 8110069, at *3-4 (E.D. Tex. Nov. 19, 2019) (finding waiver where "information relied upon by [defendant] for th[e] argument was present in the prosecution history and available to [defendant] at the time of claim construction"); *Ultimate Combustion Co., Inc. v. Fuecotech, Inc.*, 2013 WL 12091158, at *3 (S.D. Fla. Nov. 4, 2013) (finding waiver where defendant "failed to adhere to any of the appropriate deadlines" for claim construction).  The Court should find the same here.

### 5.   Conclusion

For the reasons discussed above, Vertex respectfully requests that the Court decline to construe the disputed terms or, in the alternative, adopt Vertex's proposed claim construction of plain and ordinary meaning for the three disputed "about" terms.

### B.   Defendants' Answering Position

#### 1.   The specification and prosecution history support Lupin's proposed constructions.

The exemplary formulations, specific values, and ranges provided in the specification show that the patentee identified ingredient quantities with precision, and used the word "about" to account for the application of only basic rounding principles.  (*See* Defendants' Intrinsic Evidence in the Join Claim Construction Chart (D.I. 78) which Lupin incorporates by reference.)

##### a.   Specification of the '106 Patent

When construing a claim term, the court "should first look to the intrinsic evidence," which includes the specification.  *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001).  The specification of the '106 patent consistently uses "about" to identify

quantities with specificity. It identifies numerous embodiments containing the exact values contained in the disputed terms. (*See, e.g.*, '106 patent (Exhibit A) at 17:57-61; 51:48-50; 60:21-24; 77:30-34; 82:58-62; 84:3-8, 36-40; 85:25-29, 49-53; 86:6-10; 104:4-8; 113:20-25; 126:21-25; 184:65-185:3; and 189:56-60.)

Further, the specification refers to exact quantities – either specific whole numbers or specific fractions – to identify amounts of Compound I and excipients in conjunction with "about." *See* '106 patent (Exhibit A) at 51:41-44 ("about 50 wt %" Compound I, "about 49.5 wt % of HPMCAS, and about 0.5 wt % of SLS"); 51:44-47 ("about 72.4 wt %" Compound I, "about 27.1 wt % of HPMCAS, and about 0.5% wt % of SLS"); 56:13-32 (reciting examples that contain "about 0.5 wt %" of SLS, "about 0 wt %" of SLS, "about 0.175 wt %" of SLS, "about 0.205 wt %" of SLS, "about 0.235 wt %" of SLS, "about 0.675 wt %" of SLS, "about 0.705 wt %" of SLS, or "about 0.735 wt %" of SLS); 60:8-12 ("about 72.4 wt %" Compound I, "about 27.1 wt % of HPMCAS . . . and about 0.5 wt % SLS").[3]

Where the patentee intended to refer to a quantity as a range of values in the specification, it so indicated. *See* '106 patent (Exhibit A) at 7:23-31 (identifying "from about 40 wt % to about 60 wt %" of Compound I, "from about 60 wt % to about 95 wt %" of Compound I, "from about 60 wt % to about 40 wt % of polymer," "from about 40 wt % to about 5 wt % of polymer"); 7:36-40 (identifying "from about 45 wt % to about 85 wt %" of Compound I, "from about 0.45 wt % to about 0.55 wt % of SLS," and "from about 14.45 wt % to about 55.55 wt % of HPMCAS"); 17:38-

---

[3] *See also* '106 patent (Exhibit A) at 51:1-50; 59:30-38, 40-48, 51-59; 59:63-60:67; 61:32-64:67; 75:57-77:41; 78:22-55; 78:61-79:4; 79:25-37; 79:44-80:8; 81:60-82:5; 82:15-27, 37-48; 82:56-83:1; 83:14-26; 83:34-84:14; 84:34-47; 84:63-85:8; 85:23-36, 47-65; 86:4-17; 99:37-41; 100:23-101:25; 101:44-57; 103:55-67; 105:16-26; 106:12-26; 107:65-108:11; 109:3-12; 111:45-56; 113:19-32; 114:22-32; 115:60-116:6; 116:62-117:6; 118:30-43; 119:34-45; 121:1-15; 122:5-17; 123:25-29, 40-53; 124:47-50; 124:43-55; and 126:19-32.

22

40 (SLS "present in an amount of about 2 or less percent by weight of the composition"); 50:44-46 ("Compound I is present in an amount of at least 20 wt % (e.g., at least 40 wt %, at least 45 wt %, at least 49 wt %, or at least 50 wt %)"); 50:47-49 (Compound I "from about 20 wt % to about 99 wt %, including all the values and ranges contained therein"); 50:54-56 (Compound I "from about 40 wt % to about 60 wt % including all of the values and ranges contained therein"); 50:61-63 (Compound I "from about 65 wt % to about 95 wt %, including all of the values and ranges contained therein"); 51:4-7 (polymer (e.g., HPMCAS) "from about 1 wt % to about 80 wt %, including all of the values and ranges contained therein"); 51:38-40 ("from about 0.45 wt % to about 0.55 wt % of SLS, and from about 14.45 wt % to about 55.55 wt % of HPMCAS"); 56:4-8 ("10 wt % or less (e.g., about 5 wt % or less, about 2 wt % or less, about 1 wt % or less, about 0.8 wt % or less, or about 0.6 wt % or less" of SLS); 56:9-12 (SLS "from about 10 wt % to about 0.01 wt % (e.g., from about 3 wt % to about 0.01 wt % or from about 2 wt % to about 0.05 wt %)"); *see also* '106 patent (Exhibit A) at 51:8-35; 58:63-64; 59:7-26; 61:1-16, 21-31; 74:66-75:56; 99:37-100:22; 101:33-43; 101:61-102:10; 104:8-19; 106:59-107:10; 107:48-49, 52-64; 109:48-64; 110:31-41; 112:25-42; 113:1-3, 7-18; 115:1-17, 40-44, 48-59; 117:37-55; 118:10-13, 18-29; 120:6-23, 48-52, 58-67; 122:49-65; 123:22-24, 29-39; 125:25-41; 125:67-126:2; and 126:7-18.

The claimed amount of SLS provides further support for Lupin's proposed constructions. Since the claimed amount of SLS is "about 0.5%", the range for "about" may be no greater than an amount that would take it through rounding to the next integer. Under no circumstances can the range for the word "about" be equal to or greater than 0.5% because if the range were that large, the requirement that the solid dispersion contain SLS would completely disappear (0.5% minus 0.5% is zero).

23

Construing "about" any broader than what Lupin has proposed would run contrary to the patentee's differentiation between whole numbers and fractions in the claims and specification and could potentially vitiate the requirement that the claimed formulation contains SLS.

Plaintiff's reliance on *Pacira Pharmaceuticals, Inc. v. eVenus Pharmaceuticals Laboratories, Inc.* and *Ferring B.V. v. Watson Laboratories, Inc.-Florida* is misplaced. In *Pacira*, the court stated it would not construe "about" using rounding principles where there was no "intrinsic evidence to support such a construction." *Pacira Pharms., Inc. v. eVenus Pharms. Lab'ys, Inc.,* C.A. No. 22-718, 2023 WL 3841559, at *14 (D.N.J. June 6, 2023). Here, Lupin has detailed how the intrinsic evidence supports its proposed construction of "about." In *Ferring*, the court rejected plaintiff's proposed construction of a range for "about" where the extrinsic evidence plaintiff relied on was misinterpreted (the U.S. Pharmacopeia required a calculated dissolution rate to be *exact* and did not allow for a calculated result to be +/- 10 % of the actual value as plaintiff argued). *Ferring B.V. v. Watson Lab'ys*, 764 F.3d 1382, 1388-89 (Fed. Cir. 2014).

### b.        Prosecution History of Similar Patents

In its Opening Claim Construction Brief, Plaintiff discusses the '481 patent and the '916 patent, both of which are assigned to Vertex and claim pharmaceutical compositions comprising a solid dispersion comprising ivacaftor, HPMCAS, and SLS with other possible excipients. The '481 and '916 patents have the same title as the '106 patent (i.e., "Pharmaceutical Composition and Administrations Thereof") and recite similar terms as those of the '106 patent currently in dispute. Specifically, the '481 and '916 patents claim the same numerical quantities of ivacaftor, HPMCAS, and SLS in the solid dispersion, but do not modify such quantities as being "about."

As detailed in the Background, Plaintiff represented to the PTO during the prosecution of the '066 patent application (a parent of the applications that issued as the '481 and '916 patents) that the "specific" excipients and "specific" amounts of excipients and API in the formulation

24

distinguished it from the formulations of the prior art.  In doing so, Plaintiff represented that these values are meant to be interpreted with specificity and surrendered any claim interpretation of these values to the contrary.  *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997); *RFID Tracker, Ltd. v. Wal-Mart Stores, Inc.*, 342 F. App'x 628, 630 (Fed. Cir. 2009).

Following the representations made to the PTO in the prosecution of the '066 application, Vertex filed additional patent applications in a second patent family that includes the  applications that issued as the '206, '046, '770, and '106 patents.   This second patent family claims pharmaceutical compositions containing the quantities listed in the disputed terms, which are the exact same quantities that were pending in the '066 application when the patentee distinguished these amounts from the prior art based on the specific excipients and specific amounts of excipients and API claimed.  *See* '066 application prosecution history, September 7, 2012 Amendment at 2, 3, 4, and 7-8 (Exhibit E).

In the same patent family, a patentee cannot recapture surrendered claim scope in litigation because claims should not be "construed one way in order to obtain their allowance and in a different way against accused infringers." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1380 (Fed. Cir. 2021) (quoting *Aylus Networks, Inc. v. Apple Inc*., 856 F.3d 1353, 1360 (Fed. Cir. 2017)). The outcome should be no different where congruent claims are procured in a similar patent family.

The specific amounts of ivacaftor and excipients contained in the disputed terms of the '106 patent should be limited to their *specific* amounts based on these representations made by the patentee during prosecution. This construction would allow only for fractions of the recited numbers that result from basic rounding, as Lupin proposes in its claim constructions.

### 2.    Plaintiff failed to follow the Amended Scheduling Order.

The Amended Scheduling Order entered in this case requires that "[i]f a party proposes a construction of a term to be its 'plain and ordinary' meaning, the party must explain what that

25

meaning is." (*See* Amended Scheduling Order (D.I. 65) at FN 1). Plaintiff asserts that "[t]he plain and ordinary meaning of this term is the exact claim language," but Plaintiff's arguments do not meet the clear requirements of the Amended Scheduling Order, which requires Vertex to explain specifically what it means when it states that the disputed terms should be given their "plain and ordinary" meaning.

Plaintiff's proposed constructions are vague and uncertain. Plaintiff seeks broad constructions with no proper metes and bounds, despite the representations Plaintiff made to the PTO to the contrary. This is exactly what the patent laws try to avoid.

### 3.    Plaintiff's arguments have no merit.

Plaintiff argues that a term should not be construed if its construction could resolve infringement. However, a court should not forego claim construction simply because the construction of a patent term may impact the infringement analysis. The case *PPG Industries v. Guardian Industries Corp.* that Plaintiff cites to for support   does not state that a court cannot construe claims to provide clarity on their meaning in a manner that facilitates the comparisons between the claim and the accused product. Rather, in *PPG Indus.*, the court construed the disputed term but explained that the finder of fact plays the role of determining whether the properly construed claim reads on the accused device, which Lupin does not dispute. *See PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("after the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact.") Plaintiff also argues that Lupin waived its right to claim construction, citing *Music Choice v. Stingray Digital Group. Inc.* and *Ultimate Combustion Co. v. Fuecotech, Inc.* However in *Music Choice*, the defendant did not raise its proposed claim construction during the claim construction process and its proposed

26

constructions contradicted its prior invalidity positions. No. 2:16-00586, 2019 WL 8110069, at *3-4 (E.D. Tex. Nov. 19, 2019). In *Ultimate Combustion*, the defendants failed to exchange preliminary constructions or engage in briefing during the claim construction deadlines, but then attempted to introduce evidence after the claim construction deadlines had passed and the court had construed the claims. No. 12-60545-CV, 2013 WL 12091158, at *3 (S.D. Fla. Nov. 4, 2013). Here, the Amended Scheduling Order negotiated and agreed to by the parties permits Lupin to raise the claim construction issues it has with respect to the '106 patent, regardless of whether Lupin previously raised these issues during claim construction for other asserted patents. Consistent with that order, Lupin proposed terms for construction as well as proposed constructions. (*See* Amended Scheduling Order (D.I. 65) at 4-6.)

Plaintiff also argues that claim construction is unnecessary. But construction of the proposed terms is necessary to evaluate literal infringement. In addition, where, as here, the Plaintiff is principally pursuing a doctrine of equivalents theory, an understanding of the proper scope of each claimed element is necessary because the doctrine of equivalents "must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29-30 (1997).

### 4.    Alternatively, the proposed terms are indefinite[4].

If the Court disagrees with Lupin's proposed constructions for the disputed terms, these terms are necessarily indefinite.

---

[4] Plaintiff argues that Lupin did not assert that the disputed terms were indefinite in its paragraph IV notice letter for the '106 patent, its invalidity contentions for the '106 patent, or any of the other asserted patents that employ "about" terms. However, Lupin is not limited to the representations made in its notice letters. *See Abbott Lab'ys, Inc. v. Apotex Inc*., 725 F. Supp. 2d 724, 727 (N.D. Ill. 2010) (refusing to strike defense theories not raised in defendant's notice letter because ANDA filers are "not limited to the invalidity and noninfringement theories raised in its paragraph IV letter"); *Astra Aktiebolag v. Kremers Urban Dev. Co*., No. 99 Civ. 8928 (BSJ), 2000 U.S. Dist. LEXIS 2511, at *4 (S.D.N.Y. Mar. 6, 2000) ("There is no language in the relevant statutory

27

Patents must particularly point out and distinctly claim the subject matter which the inventor regards as the invention in order to provide the required notice to the public regarding the scope of the patentee's right to exclude. *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002). Where a claim does not clearly and precisely identify the protected subject matter, it is indefinite. Specific terms of a patent are construed in order to resolve uncertainty or ambiguity in certain terms so that the scope of the claimed invention can be determined. *U.S. Surgical Corp. v. Ethicon, Inc*., 103 F.3d 1554, 1568 (Fed. Cir. 1997).

Plaintiff's proposed constructions merely assert that no construction is needed (or alternatively, that the constructions should be the exact language recited in the claims), which fails to remedy the ambiguity of using "about" to describe specific ingredient quantities, particularly in light of the patentee's representations that the specific quantities play a role in the claimed formulation and are what distinguish the claimed formulation from the prior art. Plaintiff's proposed constructions do nothing to clarify the claim scope of the invention and will result in only further uncertainty. *See IQASR LLC v. Wendt Corp*., 825 F. App'x 900, 907 (Fed. Cir. 2020) ("the claim is still indefinite if a [POSA] cannot translate the definition into meaningfully precise claim scope"); *see also Pac. Coast Bldg. Prods., Inc. v. CertainTeed Gypsum, Inc.,* 816 F. App'x 454, 459 (Fed. Cir. 2020) (affirming a finding of indefiniteness where the patent "fail[ed] to provide guidance to a skilled artisan for how to measure [one claim limitation] with reasonable certainty" and further explaining that "[w]hile the claims recite a particular value [of a limitation],

---

provisions, legislative history or cases barring [an ANDA filer] from raising defenses and counterclaims not noticed in [its] ANDA."). Further, discovery is still ongoing, and Lupin is permitted to supplement its invalidity contention under the local rules. (*See* Delaware Default Standard for Discovery, including Discovery of Electronically Stored Information, FN 3 indicating that initial invalidity contentions are "initial" and "each party shall be permitted to supplement.")

28

the claims and specification fail to explain what the value represents or how to consistently and reproducibly measure" the limitation).

### 5.    Conclusion

For the reasons provided herein, Lupin respectfully requests that the Court adopt its proposed constructions for the disputed terms of the '106 patent.

### C.    Plaintiff's Reply Position

#### 1.    Vertex's Proposed Construction Is Consistent with the Intrinsic Evidence

Lupin criticizes Vertex for purportedly failing to "explain specifically what it means when it states that the disputed terms should be given their 'plain and ordinary' meaning." As explained in Vertex's opening brief, Vertex proposes the exact claim language *as the plain and ordinary meaning* because the word "about" is sufficiently clear without construction. *Supra* at 15-17. Although courts have on occasion adopted "approximately" as the plain and ordinary meaning, this is simply a synonym for "about" and Vertex does not believe such a construction would further elucidate the claim's meaning.

Vertex's construction of plain and ordinary meaning, *i.e.*, the exact claim language, is consistent with the use of the word "about" in the specification of the '106 patent. *See, e.g.*, *Pacira Pharms., Inc. v. eVenus Pharms. Lab'ys, Inc.*, C.A. No. 22-718, 2023 WL 3841559, at *14-15 (D.N.J. June 6, 2023); *Sun Pharms. Indus. Ltd. v. Saptalis Pharms., LLC*, C.A. No. 18-648-WCB, 2019 WL 2549267, at *3-5 (D. Del. June 19, 2019). As explained in Vertex's opening brief, the specification recites many exemplary embodiments of pharmaceutical compositions comprising the claimed solid dispersion (and methods of treatment using the same) using the same language as set forth in the claims. *Supra* at 16-19. There is no special definition or usage of the word

29

"about" in the specification suggesting that it represents specific numerical distinction to depart from its ordinary meaning.

### 2. Lupin Seeks a Narrow Construction That Is Not Supported by the Intrinsic Evidence

Lupin admittedly seeks a literal infringement ruling with its proposed strict numerical construction for the word "about" in the three ivacaftor solid dispersion component terms of the '106 patent. *Supra* at 28. However, the ultimate question of whether the amount of ivacaftor, HPMCAS, and SLS in Lupin's generic ivacaftor oral granules infringe the asserted claims of the '106 patent remains for the Court to resolve later in this case, not during claim construction. Although a court can construe claims if needed to provide clarity, "[t]hat does not mean… that a court, under the rubric of claim construction, may give a claim whatever additional precision or specificity is necessary to facilitate a comparison between the claim and the accused product." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998). As the meaning of the word "about" is clear, it is Vertex's position that no construction is necessary—not that the "term should not be construed if its construction could resolve infringement" as Lupin mischaracterizes. *Supra* at 26.

Lupin repeatedly argues that the specification describes "exact" quantities or values that are "identified with precision." *Supra* at 22-24. Lupin also confusingly argues that the specification differentiates "between whole numbers and fractions[5] in the claims and specification." *Supra* at 22-24. But both whole numbers (*i.e.*, 80%) and decimal numbers (*i.e.*, 19.5%, 0.5%) appear in the disputed claim terms.

---

[5] Vertex assumes Lupin is referring to decimal numbers, as there are no numbers in the specification recited as fractions.

As support for its arguments, Lupin relies on exemplary embodiments from the specification. *Supra* at 22-24. These examples do not support Lupin's argument that each claimed value should be rounded to a decimal place. First, exemplary embodiments alone are not a basis to import limitations. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *see also Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("[A] patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its scope."). Moreover, the exemplary embodiments cited by Lupin, like the disputed claim terms, contain both whole numbers and decimal numbers—with the decimal numbers in the embodiments ranging in specificity from one to three decimal places—all of which are described using the term "about."

Likewise, these exemplary embodiments do not support limiting the claimed values to their "rounding range" as Lupin contends. *Supra* at 23-24. Numbers are presented in various different forms in the specification, and Lupin provides no example of "rounding" in the specification.

Lupin also cites no legal authority in its brief for reading in a "rounding range." As explained in Vertex's opening brief, courts have declined to import rounding ranges absent support in the specification. *See, e.g.*, *UCB, Inc. v. KV Pharm. Co.*, C.A. No. 08-233-JJF, 2009 WL 2524519, at *3-7 (D. Del. Aug. 18, 2009) ("Although, as Defendant notes, the specification describes various exemplary dosage strengths within the 10 to 40 mg dosage range (i.e., 10 mg, 20 mg, 25 mg, and 30 mg), the Court sees nothing about these particular examples suggesting that the endpoints of the 10 to 40 mg dosage range should be limited in terms of 'measurement error' or 'rounding error.'"). The evidentiary hallmarks that could support a narrower construction of

31

"about," such as differences between the value recited in the disputed claim and values recited in other claims, are absent here. *UCB*, 2009 WL 2524519, at *5. None of the other asserted claims contain solid dispersion terms reciting different ivacaftor, HPMCAS, or SLS weight percentage values. *Supra* at 7.

Lastly, with respect to the "about 0.5 wt %" SLS term, Lupin contends that any construction broader than the rounding range could "potentially vitiate the requirement that the claimed formulation contains SLS." *Supra* at 24. Whether a claim limitation is present, literally or equivalently, is not the issue here. Moreover, Vertex is not proposing a construction that would "vitiate" this claim limitation.

### 3. The Prosecution History Cited by Lupin Is Extrinsic Evidence Irrelevant to the Claim Construction of the Disputed "About" Terms

Lupin contends that the "prosecution history of similar patents" support limiting the "about" terms to their rounding ranges. *Supra* at 24-25. Specifically, Lupin argues that a single statement made by applicant during the prosecution of U.S. Patent Application No. 12/583,066 (the "'066 application"), an abandoned application from the same family as the '481 and '916 patents, operates as a disclaimer of "any claim interpretation of these values to the contrary." *Id.* at 25; *see also id.* at 11-12. There is no basis for construing terms in the '106 patent based upon a general statement made during prosecution of the unrelated '066 application. The '066 application was directed to a different invention and had a different specification and different inventors from the '106 patent. *Compare* Exhibit A at 1*, with* Exhibit H at 1.

### a. There Is No Precedent for Applying the Doctrine of Prosecution Disclaimer to Unrelated Patents

Lupin relies primarily on *Verizon* to support its prosecution disclaimer argument. However, the court in *Verizon* addressed a different question of whether statements made by a patentee during prosecution of a patent in the same family can operate as a disclaimer. *Verizon*

*Servs. Corp. v. Vonage Holding Corp.*, 503 F.3d 1295, 1306-07 (Fed. Cir. 2007).   Despite

acknowledging this distinction, Lupin identifies no support or rationale for extending the doctrine

of prosecution disclaimer to statements made during the prosecution of an unrelated application

from a different patent family.  *See, e.g.*, *Supra* at 25 ("Vertex filed additional patent applications

in a second patent family that includes the applications that issued as the '206, '046, '770, and

'106 patents.").

      The other cases cited by Lupin also fail to support Lupin's reliance on the '066 application.

For example, *Vitronics Corp. v. Conceptronic, Inc.* does not support the proposition that other

patents and patent applications can be considered to resolve ambiguity in disputed terms.  90 F.3d

1576 (Fed. Cir. 1996).   Rather, *Vitronics* merely sets forth the claim construction canon that

extrinsic evidence may be considered where the intrinsic evidence alone "is insufficient to enable

the court to determine the meaning of the asserted claims."  *Id.* at 1584.  Likewise, *SpeedTrack*

addressed statements made during prosecution of the patent whose claims were being construed.

*SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1380 (Fed. Cir. 2021).  Nowhere did the court

address whether it would be appropriate to extend the doctrine of prosecution disclaimer to

unrelated patent families.  Lupin fails to cite any legal authority in support of the proposition that

"[t]he outcome should be no different where congruent claims are procured in a similar patent

family" rather than the same patent family.  *Supra* at 25.

      Courts have rejected prior attempts by defendants to rely on the prosecution history of

unrelated applications.  *See, e.g.*, *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1369

(Fed. Cir. 2016) ("[T]here is no reason why the construction of claim terms in the '115 and '322

patents should be the same as the '084 and '306 patents . . . these two families of patents claim

two different inventions, list only one inventor in common, were filed years apart, and do not result

from the same patent application."); *Abbott Lab'ys v. Dey, L.P.*, 287 F.3d 1097, 1104-05 (Fed. Cir. 2002). For example, in *ESCO*, this Court rejected a similar argument that statements made during the prosecution of a commonly owned but unrelated patent effected a disclaimer of the asserted patent's scope. *ESCO Grp. LLC v. Deere & Co.*, C.A. No. 20-1679-RGA-JLH, 2022 WL 1025967, at *3-4 (D. Del. Apr. 6, 2022), *report and recommendation adopted*, D.I. 156 (Jan. 26, 2023) ("Deere's briefing cited no case standing for the proposition that statements made during prosecution of one patent could result in a disclaimer of claim scope in a completely unrelated patent (with a different inventor), and I am unaware of any."). There is no reason to hold otherwise here.

Like in *Symantec* and *ESCO*, the '066 application and '106 patent lack any relationship. They are also directed to different inventions contrary to what Lupin suggests: the plain language of the then-pending '066 application claims recite *tablet* pharmaceutical compositions comprising a solid dispersion of ivacaftor, whereas the asserted claims of the '106 patent recite pharmaceutical compositions containing a solid dispersion of ivacaftor, including formulations of the same into *granules, pellets, particles, and mini-tablets*. The pharmaceutical compositions claimed in the '066 application and the '106 patent also comprise different excipients such as sucralose, which is present in the latter but not former. Although both the '066 application and '106 patent have one common inventor, nineteen other inventors are named across the two documents. Accordingly, Lupin's argument amounts to no more than the "common assignee, one common inventor, and similar subject matter" argument rejected by the Federal Circuit in *Dey*. 287 F.3d at 1105 ("we do not see a basis for concluding that statements made about the characteristics of the surfactant claimed by the '301 patent should be attributed to . . . the '839 patent, simply because the applications had a common assignee, one common inventor, and similar subject matter").

34

**b.**      **To the Extent the Court Considers this Extrinsic Evidence, Lupin Fails to Show Any Disclaimer That Would Limit the Claims to Their Rounding Ranges**

Even if it was proper to consider the prosecution history of unrelated applications in claim construction, the Court need not consider the issue of prosecution disclaimer here. There is no ambiguity in the plain language of "about" that warrants the need to resort to extrinsic evidence, like the prosecution history of the '066 application, to determine the meaning of the claims. *See Phillips*, 415 F.3d at 1324 (extrinsic evidence may not be used to "contradict claim meaning that is unambiguous in light of the intrinsic evidence"). The specification is "the single best guide to the meaning of the disputed term." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1374 (Fed. Cir. 2014).

Moreover, Lupin fails to provide sufficient support or explanation for its prosecution disclaimer argument. To overcome the heavy presumption that the "about" terms carry their full ordinary and customary meaning, Lupin must demonstrate a "clear and unmistakable" disclaimer of claim scope. *Thorner*, 669 F.3d at 1366-67. Lupin fails to do so here.

Lupin's prosecution disclaimer argument centers around a single statement made by the applicant during the prosecution of the '066 application in response to a § 103 obviousness rejection. *Supra* at 11-12. Specifically, Lupin contends that the applicant's use of the phrase "specific" in reference to the claimed excipient terms amounts to a "represent[ation] that these values are meant to be interpreted with specificity and surrendered any claim interpretation of these values to the contrary." *Supra* at 25. Lupin provides no explanation for how the use of this language amounts to a disclaimer of all scope beyond the rounding range. When the applicant's statement is read in its full context, it is evident that the applicant made no representation that the claimed invention was limited to pharmaceutical compositions comprising a solid dispersion containing *exactly* the recited values of ivacaftor, HPMCAS, and SLS, as Lupin argues.

35

The cases cited by Lupin do not support a contrary finding.  In *Ekchian*, the district court was found to have erred in concluding the term "conductive" limited by the prosecution history while in *RFID*, the court found disclaimer based on repeated statements expressly distinguishing the claimed invention from prior art.  *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1303-04 (Fed. Cir. 1997); *RFID Tracker, Ltd. v. Wal-Mart Stores, Inc.*, 342 F. App'x 628, 631-32 (Fed. Cir. 2009) ("With regard to the applicant's invention, '*in distinction*, the present technology *only requires* that the interrogator generate a field and *receive tag signals* [.]' The applicant further stressed that this distinction was '*fundamental*.'") (citation omitted).

### 4.    Lupin Has Failed to Show That the Disputed Terms Are Indefinite

Lupin contends that if the Court rejects Lupin's proffered claim construction, the disputed "about" terms "are necessarily indefinite." *Supra* at 27.  Lupin again fails to identify any evidence supporting the alleged indefiniteness of the "about" terms or provide any explanation for why the Court should depart from established precedent.  As explained in Vertex's opening brief, use of terms of approximation like "about" do not render a claim indefinite merely because they do not impose strict numerical limits.  *See, e.g.*, *Transcend Med., Inc. v. Glaukos Corp.*, C.A. No. 13-830, 2015 WL 5546988, at *8 (D. Del. Sept. 18, 2015) ("[A] strict exact limitation on the size of incision would be inappropriate and the phraseology of the contested term accounts for this.  As such, the term 'less than about 1 mm' informs a skilled artisan as to the scope of the invention with reasonable certainty and, thus, is not indefinite."); *SZ DJI Tech. Co. v. Autel Robotics USA, LLC*, C.A. No. 16-706-LPS, 2019 WL 6840357, at *5 (D. Del. Dec. 16, 2019) ("at least about 3 cm" not indefinite); *Whirlpool Corp. v. Ozcan*, C.A. No. 2:15-cv-2103-JRG, 2016 WL 7474517, at *3 (E.D. Tex. Dec. 29, 2016) ("about 2 cm" not indefinite).

The cases that Lupin relies on, *IQASR* and *Pacific Coast*, are inapposite.  In *IQASR*, the Federal Circuit found the term "magnetic fuzz" indefinite in view of evidence presented by

36

defendant supporting how the term "lack[ed] 'a readily-understood definition in its field.'" *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 902-03 (Fed. Cir. 2020).  Likewise, in *Pacific Coast*, the Federal Circuit found the term "scored flexural strength" indefinite where the patent "fail[ed] to provide guidance to a skilled artisan how to measure the newly coined characteristic 'scored flexural strength' with reasonable certainty."  *Pacific Coast Bldg. Prods., Inc. v. CertainTeed Gypsum, Inc.*, 816 F. App'x 454, 459 (Fed. Cir. 2020).  Although the court noted that the claims recited the value of "about 22 pounds per 1/2 inch thickness," the court's determination centered around the existence of multiple methods for measuring the claimed "scored flexural strength" and their impact on the result of the measurement, not any uncertainty stemming from the term "about."  *Id.*  Lupin's conclusory contentions—which are unsupported by the caselaw Lupin relies on—cannot meet the heavy burden of proof of establishing indefiniteness by clear and convincing evidence.  Accordingly, the Court should reject Lupin's indefiniteness argument.

### 5.    Conclusion

For the reasons discussed above, Vertex respectfully requests that the Court decline to construe the disputed terms or, in the alternative, adopt Vertex's proposed claim construction of plain and ordinary meaning for the three disputed "about" terms.

### D.    Defendants' Sur-Reply Position

#### 1.    The Intrinsic Evidence Supports Lupin's Proposed Constructions

The claim language itself, to which "the Court should look first and foremost" and whose "[d]ifferences . . . can also be a useful guide," supports the application of rounding principles in the proposed terms.  *Id.* at *2 (internal cite omitted).  Here, the patentee's use of "about" for quantities in certain claim limitations of the '106 patent, but not others, supports a rounding principle where it is used (and a precise value where it is not).  *See, e.g.*, *Baxter Healthcare Corp. v. Nevakar Injectables, Inc.*, No. CV 21-1184-CJB, 2023 WL 4175261, at *14–16 (D. Del. June

37

26, 2023) (court construed quantities in terms exactly as written rather than using rounding or margins of error where they were not qualified by "about" but other claim limitations were); *see also Jeneric/Pentron, Inc. v. Dillon Co.,* 205 F.3d 1377, 1381 (Fed. Cir. 2000) (terms construed with numerical precision where they did not contain qualifying language but other limitations did); s*ee also Takeda Pharm. Co. v. Zydus Pharms. USA, Inc*., 743 F.3d 1359, 1365 (Fed. Cir. 2014) ("had the inventors desired the average particle diameter to include a margin of error, they could easily have included the word 'about' in the claim language.").

Additionally, the specification at large supports the use of a rounding principle. For example, the specification refers to quantities with varying significant figures past the decimal point[6], as indicated in Lupin's Answering Position ("Defendants' Answering Position"). *See, e.g.,* '106 patent (Exhibit A) at 51:38-39 ("from about 0.45 wt % to about 0.55 wt % of SLS"); *id.* at 51:50 ("about 0.5 wt % of SLS"); *id.* at 51:39-40 ("from about 14.45 wt % to about 55.55 wt % of HPMCAS"); *id*. at 51:50 ("about 19.5 wt % of HPMCAS"); *see also* Defendants' Answering Position at FN3. The specification also cites to quantities containing trailing zeros, as well as quantities without trailing zeros. *See, e.g.,* '106 patent (Exhibit A) at 57:10-14 ("lubricant in an amount of 10 wt % or less (e.g., 2.5 wt %, 2.0 wt %, 1.75 wt %, 1.5 wt % or less, 1.25 wt % or less. or 1.00 wt % or less)"); *id.* at 7:56-59 ("lubricant (e.g., magnesium stearate []) in concentrations of about 5 wt % or less"); *id.* at 57:29-31 ("about 1.0 wt % of magnesium stearate"); *id*. at 167:64-66 ("each mini-tablet weigh[s] about 7.0 mg" and "approximately 75 mg of

---

[6] While Lupin's reference to "fraction" in its Answering Position is appropriate provided the definition in the Oxford dictionary (defining fraction as "[a] numerical quantity that is not an integer")(*see* Exhibits F and G), Lupin refers here to "significant figures past the decimal point" for clarity. Lupin uses these terms interchangeably in the context of this briefing.

Compound 1 per about 29 mini-tablets"); *see also id*. at 57:15-26, 101:29-57, 101:61-102:10, 122:16-17, 177:16-17, and 178:4-8.

Specific and varying use of significant figures past the decimal point and trailing zeros in a specification shows a specific intent by the patentee in selecting numbers, which supports the construction of "about" to account for a significant figures rounding principle. *See Arbutus Biopharma Corporation et al v. Moderna, Inc*., 1-22-cv-00252, Memorandum Opinion at 19 (D. Del. April 3, 2024), ECF No. 266 (use of significant figures past a decimal point, including trailing zeros, in specification showed inventor's intent to apply significant figures rounding); *see also Noven Pharms., Inc. v. Actavis Lab'ys UT, Inc.*, No. CV 15-249-LPS, 2016 WL 3625541, at *3-4 (D. Del. July 5, 2016) (claimed quantity rounded based on the number of significant figures (that is, 15 was between 14.5 and a value less than 15.5) where patentee used varying significant figures in the specification); *id.* (significant figures "describe the precision of a measurement" and their varying use in a specification is meaningful because it is not reasonable "to believe the patentee gave careful thought to how it used significant figures in some portions of the specification . . . but not [] other[s].")

Vertex argues that there is "no special definition" in the specification that permits a departure from the plain and ordinary meaning and that "courts have declined to import rounding ranges absent support in the specification." *See* Plaintiff's Reply Position ("Plaintiff's Reply") at 29-30, 31. However, Vertex has failed to provide adequate support for what it states is the "plain and ordinary" meaning, other than insisting that the meaning is "clear." *Id.* at 30. In fact, application of the rounding principle has at times been used as the "plain and ordinary" meaning of a term. S*ee, e.g. Noven Pharms., Inc.*, 2016 WL 3625541, at *5 (court construed "plain and ordinary meaning . . . in the context of the patent-in-suit" for term "15 mg/cm2" to be "greater than

39

or equal to 14.5 mg/cm2 and less than 15.5 mg/cm2"). That aside, there need not be a specific definition or explicit disclaimer in the specification to depart from using a plain and ordinary meaning. *See Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016) ("[e]ven when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents") (internal cite omitted).

Further, this court has applied significant figures rounding where the specification disclosed amounts using varying significant figures and varying use of trailing zeros after the decimal point. *See, e.g.*, *Arbutus Biopharma*, 1-22-cv-00252, Memorandum Opinion at 19, ECF. No. 266; *see also Noven Pharms., Inc.*, 2016 WL 3625541, at *4–5. *UCB v. KV Pharm* does not support Vertex's position because the patent at issue in that case did not include the disclosure of numbers in the specification with various significant figures and trailing zeros. *UCB, Inc. v. KV Pharm. Co.*, No. CIV A 08-223-JJF, 2009 WL 2524519 (D. Del. Aug. 18, 2009).

Vertex has not identified any support in the specification for its assertion that rounding based on significant figures should *not* be used. *See Heron Therapeutics, Inc. v. Fresenius Kabi USA, LLC* et al, No. 1-22-cv-00985, Memorandum Opinion and Order at 13 (D. Del. May 15, 2024), ECF No. 150 ("Fresenius has identified nothing in the intrinsic record of this case that would suggest… that a different rounding convention should be used in construing the asserted claims. There is therefore no reason to deviate from the standard significant figures practice in this case."); *see also AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325, 1330 (Fed. Cir. 2021) (district court's construction applying standard significant figures rounding principle to a claimed percentage reversed where the specification discouraged values within that range and supported a narrower construction.).

40

Contrary to Vertex's suggestion otherwise, courts have frequently applied the standard scientific convention of rounding to claim terms based on the number of significant figures in pharmaceutical composition claims. *See, e.g., Heron Therapeutics,* No. 1-22-cv-00985, Memorandum Opinion and Order at 12-14, ECF No. 150 (terms for quantities in pharmaceutical formulation construed based on significant figures rounding principles); *see also Johnson Matthey Inc. v. Noven Pharms., Inc.*, No. 2:07-CV-260-CE, 2009 WL 2208214, at *5 (E.D. Tex. July 21, 2009) (patent's disclosure of melting point values using two significant figures without a decimal point "incorporate[ed] generally accepted principles of rounding, such that … 40.5 to 41.4 would be rounded to 41, and … 41.5 to 42.4 would be rounded to 42."); *Vifor Fresenius Med. Care Renal Pharma Ltd. v. Teva Pharms. USA, Inc.*, 623 F. Supp. 3d 389, 417 (D. Del. 2022), *appeal dismissed sub nom. Vifor Fresenius Med. Care Renal Pharma Ltd. v. Lupin Atlantis Holdings SA*, No. 2022-2253, 2023 WL 1794164 (Fed. Cir. Feb. 7, 2023).

### 2. The Prosecution History Of The '066 Application Is Relevant To The Proper Construction Of "About" In The '106 Patent

The '066 application and the '106 patent have the same title and contain claims directed to a pharmaceutical composition. The claims of the '066 application also contain limitations that are identical to those in the disputed terms of the '106 patent and, as Vertex acknowledges, there is overlap in the named inventors.

In addition, the publication for the '066 application – U.S. Publication No. 2010/0074949 ("the '949 publication")(Exhibit H) – is included in the References Cited in the '106 patent. The patentee submitted an Information Disclosure Statement ("IDS") during the prosecution of the '106 patent  identifying this publication, thereby acknowledging that its subject matter is relevant to the invention claimed in the '106 patent. *See* '106 patent prosecution history, August 30, 2022 IDS at 10 (Exhibit I). As a result, the '949 publication is properly considered as intrinsic evidence.

*See Ekchian v. Home Depot, Inc*., 104 F.3d 1299, 1303-1304 (Fed. Cir. 1997) ("An IDS is part of the prosecution history on which the examiner, the courts, and the public are entitled to rely. . . . It is reasonable to infer, absent an indication to the contrary, that an examiner will consider an IDS when determining whether to allow the claims; the courts and the public may rely on it as well.")

At a minimum, the prosecution history of the '066 application is properly considered as extrinsic evidence. *See 3Shape A/S v. Align Tech., Inc*., No. CV 18-886-LPS, 2020 WL 2188857, at *2 (D. Del. May 6, 2020), *report and recommendation adopted*, No. CV 18-886-LPS, 2020 WL 7695898 (D. Del. Dec. 28, 2020) ("courts may also consider extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history'") (quoting *Markman v. Westview Instruments*, 52 F.3d 967, 980 (Fed. Cir. 1995)); *Actelion Pharms. LTD v. Mylan Pharms. Inc.*, 85 F.4th 1167, 1173–74 (Fed. Cir. 2023) ("[t]he Supreme Court has made clear that there are cases where the district court must 'look beyond the patent's intrinsic evidence and . . . consult extrinsic evidence...'")(quoting *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331(2015).

In prosecuting the '066 application, the patentee distinguished the invention from the prior art based on the "**eight specific excipients**" and "**specific amounts**" of the API and excipients included. *See* '066 application prosecution history, September 7, 2012, Amendment at 7-8 (emphasis in original)(Exhibit E). The API and amount of API, as well as the amounts of HPMCAS and SLS, claimed in the '106 patent are identical to those contained in the '066 application that were distinguished from the prior art. *Id*. at 2 (Exhibit E); '106 patent 190:39-47 (Exhibit A). Should the court find any ambiguity remaining after considering the intrinsic evidence in the '106 patent, the prosecution history of the '066 demonstrates that the patentee considered the amounts of API and excipients claimed in the '106 patent to be "specific," which further supports that the term "about" should allow only for the convention of rounding.

42

Vertex's attempt to distinguish the *Verizon*, *Vitronics*, *SpeedTrack, Ekchian,* and *RFID* cases is misleading because Vertex's criticisms do not refute any statements Lupin made in the context of these cases.  Further, Vertex's own cited cases are not on point. Unlike this case, *Trustees of Columbia University v. Symantec Corp*. involved the question of whether the construction of a term in one patent family should be applied to a *completely different* term in a separate patent family where it would result in "construing the independent claim to exclude material covered by the dependent claim" and the prosecution histories did not support the proposed construction. *Trs. of Columbia*, 811 F.3d at 1370.  *Abbott v. Dey* involved a  motion for summary judgment of noninfringement (not a claim construction order) and addressed prosecution history only as it pertained to infringement under the doctrine of equivalents.  *Abbott Lab'ys v. Dey, L.P.*, 287 F.3d 1097, 1100–01 (Fed. Cir. 2002).

### 3.    The Proposed Terms Are, Alternatively, Indefinite

If the court chooses not to adopt Lupin's proposed constructions, the terms at issue are, alternatively, indefinite.  This is not because "terms of approximation" that "do not impose strict numerical limits are used."  *See* Plaintiff's Reply at 43.  Rather, it is because the claims fail to "afford clear notice of what is claimed" that "avoids a zone of uncertainty" regarding what constitutes infringement.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 899 (2014) (internal cites omitted).

While Vertex attempts to distinguish *IQASR* and *Pacific Coast* ,Vertex acknowledges that both cases involve terms that were determined to be indefinite, and Vertex's criticisms do not refute any statements Lupin made regarding these cases.  Case law supports a determination of indefiniteness for terms similar to those here.  For example, in *Amgen v. Chugai*, the Federal Circuit affirmed a district court holding that the term "about 160,000" was indefinite where it gave "no hint as to which mean value between the [prior art] value [] and … 160,000 constitute[d]

43

infringement." *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1218 (Fed. Cir. 1991). There, "about" was added to the claim language during prosecution after a prior art rejection, and the Federal Circuit stated that the "addition of [] 'about' seem[ed] to constitute an effort to recapture . . . a mean activity somewhere between [the prior art value] … and  160,000." *Id.* The Federal Circuit stated that "[w]hen the meaning of claims is in doubt, especially when, … there is close prior art, they are properly declared invalid." *Id.*

### 4.    Conclusion

For the reasons provided herein, Lupin respectfully requests that the Court adopt its proposed constructions for the disputed terms of the '106 patent, or, alternatively, allow Lupin to contest the validity of the identified "about" claims based on indefiniteness at trial.

44

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Derek J. Fahnestock
Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
dfahnestock@morrisnichols.com

OF COUNSEL:

Dimitrios T. Drivas
Alison Hanstead
Joel L. Broussard
Alexandra J. Cho
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY  10020
(212) 819-8200

C. Sebastian Zonte
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(213) 620-7700

*Attorneys for Plaintiff Vertex
Pharmaceuticals Incorporated*

October 30, 2024

MURPHY & LANDON

/s/ Francis J. Murphy
Francis J. Murphy (#223)
1011 Centre Road, Suite 210
Wilmington, DE  19805
(302) 472-8106
fmurphy@msllaw.com

OF COUNSEL:

Keith D. Parr
James T. Peterka
Nina Vachhani
Amy M. Lange
Jacob C. Britz
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0700

*Attorneys for Defendants Lupin Limited and
Lupin Pharmaceuticals, Inc.*

45